IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BLB AVIATION SOUTH CAROLINA, LLC, ) | |
| ) | |
| Plaintiff/ Counterdefendant, ) | 8:10CV42 |
| ) | |
| v. ) | |
| ) | |
| JET LINX AVIATION CORPORATION, ) | MEMORANDUM AND ORDER |
| JAMIE WALKER, JET LINX AVIATION ) | |
| LLC, and JET LINX MANAGEMENT ) | |
| COMPANY, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on a motion for summary judgment filed by defendants Jet Linx Aviation Corporation and Jamie Walker (collectively, "Jet Linx"), Filing No. 87.[1] The plaintiff, BLB Aviation South Carolina, LLC ("BLB Aviation") alleges fraudulent misrepresentation, negligent misrepresentation, breach of contract, breach of covenant of good faith and fair dealing, and breach of fiduciary duty, in connection with an Aircraft Dry Lease Agreement and an Aircraft Management Services Agreement involving aircraft owned by BLB Aviation. *See* Filing No. 99, Second Amended Complaint. Jet Linx generally denies BLB Aviation's allegations and asserts the affirmative defenses of anticipatory breach, setoff, waiver, failure to mitigate damages, performance, equitable

---

[1]Finding that the plaintiff's proposed amendments were closely related to the current claims and would not significantly delay the case or affect discovery requirements, the magistrate judge granted the plaintiff leave, over the defendants' objection, to file a second amended complaint in order to add allegations that the defendants failed to keep accurate maintenance records in violation of the Federal Aviation Regulations and the contracts governing the parties' relationship. Filing No. 98, Order. Those allegations provide additional factual support for the claims of breach of contract and breach of fiduciary duty that had already been asserted by the plaintiff. *See* Filing No. 99, Second Amended complaint. BLB also added allegations that the defendants marked up the price of maintenance work performed by third parties, thereby clarifying allegations in the Amended Complaint. *Id.* These amendments will conform the pleadings to the facts. The filing of the second amended complaint does not affect the issues presented in the motion for summary judgment.

estoppel, failure of conditions precedent, bar by integration, accord and satisfaction and preemption by FAA regulations. *See* Filing No. 100, Answer. Jet Linx has also asserted a counterclaim seeking damages for breach of contract, maintenance costs owed, and costs. *Id*. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

In its motion, Jet Linx essentially asserts that it is entitled to judgment in its favor on BLB Aviation's claims because all disputes raised in plaintiff's complaint were fully resolved through an accord and satisfaction. Alternatively, Jet Linx contends that undisputed evidence shows, as a matter of law, that BLB Aviation cannot prove its claims. It argues that an August 6, 2008, letter demonstrates the parties' intent to enter into an agreement to terminate the relationship and constitutes an accord and satisfaction. It further argues that BLB Aviation's remaining claims are not valid under Nebraska law. It argues that the alleged misrepresentation predate the contract and are barred under the parol evidence rule. Further, it argues that the contract at issue creates no fiduciary duty on its part. In opposition, BLB Aviation argues that there are genuine issues of material fact with respect to the parties' intent, that the parol evidence rule is inapplicable to a claim of fraud in the inducement, and that the contract is in the nature of an agency agreement, under which a fiduciary duty can arise.

I. FACTS

The parties agree to the following facts. *See* Filing No. 91, Brief at 2-5: Filing No. 95, Brief at 1-16. In or around March 2007, Jamie Walker approached Barry and Lee Bellue (members or owners of BLB Aviation) about the possibility of Jet Linx managing its aircraft. The 789 DJ was owned by BLB Aviation and/or Barry Bellue at that time and the 400GK was acquired by Lee Bellue after Walker's initial contact with the Bellues. The

parties came to an agreement that the 400GK would be leased to Jet Linx under the terms of a Dry Lease Agreement and the 789DJ would be managed by Jet Linx under the terms of a Management Services Agreement. On or about August 1, 2008, Jet Linx notified the FAA that both aircraft should be placed on Jet Linx "certificate." Jet Linx has demanded that BLB Aviation pay outstanding maintenance charges.

From almost the beginning of the contractual relationship between the parties, disputes arose regarding lease payments from Jet Linx to BLB Aviation and maintenance charges made by Jet Linx for which BLB Aviation was required to pay. In May and June of 2008, the disputes between the parties became increasingly hostile, resulting in BLB Aviation taking over management of the 789DJ and moving it to Baton Rouge. Jet Linx then informed BLB Aviation that it was not interested in continuing the Dry Lease Agreement under the existing terms and proposed to BLB Aviation that the 400GK continue to be leased to Jet Linx under a Dry Lease Agreement with terms different from the original Dry Lease Agreement.

Subsequently, there arose a dispute involving an outstanding insurance claim for payment of the cost of an engine tear-down and inspection of an engine. Most of the facts surrounding the incident are disputed, though the parties agree that ultimately Jet Linx contested the insurer's decision and the insurance carrier gave a more detailed response discussing its reasons for refusing to cover the claim but maintained its position denying coverage. In November 2008, Barry Bellue contacted Jet Linx and suggested that Jet Linx buy the 400GK for $1.2 million. Jet Linx indicated it had no interest in purchasing the aircraft. Jet Linx admits it has assessed maintenance charges against BLB Aviation in connection with N789DJ and N400GK, but denies that those maintenance charges were

incurred in accordance with the BLB Aviation agreements. BLB Aviation denies that such charges were proper. BLB Aviation admits that it refuses to pay improper maintenance charges. In December 2008, after its insurance carrier's final decision on coverage for the engine tear-down on the 789DJ, Jet Linx sent an invoice for that charge to BLB Aviation.

Both parties have submitted voluminous evidence in support of their respective positions. See Filing No. 104, Index of Evid., Filing No. 88, Index of Evid.; Filing No. 89, Affidavit of Jamie Barrett; Filing No. 90, Affidavit of Jamie Walker; Filing No. 92, Index of Evid., Attachments (continued). In opposition to the motion, BLB Aviation has submitted evidence that shows that on or about August 8, 2008, BLB Aviation received a letter from Jet Linx dated August 6, 2008, describing a purported "agreement" between the parties and enclosing a check. Filing No. 104, Index of Evid., Ex. 1, Decl. of Barry Bellue, Sr. at 7-8. The check did not contain a statement that it was a full settlement of all claims between the parties. *Id.* at 8. Barry Bellue disputes that he agreed to the terms of the letter. *Id.*

    II. Discussion

        A. Law

            1. Summary Judgment Standards

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the moving party meets the initial burden, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Id.* at 324.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id. at* 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary

judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.,* 371 F.3d 394, 396 (8th Cir. 2004).

## 2. Accord and Satisfaction

An accord and satisfaction is an agreement to discharge an existing indebtedness by the rendering of some performance different from that which was claimed due. *Peterson v. Kellner,* 513 N.W.2d 517, 519 (Neb. 1994). The burden of proof to maintain an alleged accord and satisfaction is on the party seeking to enforce it. *Lone Cedar Ranches, Inc. v. D.B. Jandebeur*, 523 N.W.2d 364, 369 (Neb. 1994). To establish accord and satisfaction, that party must prove (1) the existence of a bona fide dispute between the parties, (2) substitute performance was tendered in full satisfaction of the claim, and (3) BLB Aviation accepted the tendered performance. *Peterson,* 513 N.W.2d at 519. Defendants also must show that the parties had a meeting of the minds to the putative accord and satisfaction. *Lone Cedar Ranches*, 523 N.W.2d at 369. This intent requirement is the "key element" of accord and satisfaction and is a question of fact. *Id.; Lone Cedar Ranches*, 523 N.W.2d at 369. Only when the evidence "creates no conflict as to intent" is a court allowed to determine that the parties had the requisite intent as a matter of law. *Id.* Moreover, "the mere cashing of a check for partial payment sent by a debtor will not bring about an accord and satisfaction absent an intent to settle the claim." *Journal Broadcast Group, Inc. v. Spaghetti Works Restaurants*, 2000 WL 1375541 (Neb. App. Sept. 26, 2000).

### 3. Breach of Contract/Parol Evidence Rule

Under Nebraska law, the meaning of a contract and whether a contract is ambiguous are questions of law. *Kluver v. Deaver*, 714 N.W.2d 1, 5 (Neb. 2006). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Lexington Ins. Co. v. Entrex Commc'n Servs.*, 749 N.W.2d 124, 132 (2008). Proof of prior or contemporaneous oral agreements that alter, vary, or contradict the terms of a written agreement are generally inadmissible under the parol evidence rule; however, the parol evidence rule does not prevent reception or consideration of evidence to prove promissory fraud. *Abbott v. Abbott*, 195 N.W.2d 204, 208 (Neb.1972). A merger clause or disclaimer in a contract is ineffective to preclude a trier of fact from considering whether fraud induced formation of the bargain. *Camfield v. Olsen*, 164 N.W.2d 431 (Neb.1969).

### 4. Fraudulent and Negligent Misrepresentation

To succeed on a claim of fraudulent misrepresentation, a plaintiff must prove: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that the representation was made with the intention that the plaintiff should rely on it; (5) that the plaintiff did so rely on it; and (6) that the plaintiff suffered damage as a result. *Knights of Columbus Council v. KFS BD, Inc.*, 791 N.W.2d 317, 331 (Neb. 2010).

Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation, with the exception of the defendant's mental state. *Lucky 7, L.L.C. v.*

7

*THT Realty, L.L.C.*, 775 N.W.2d 671, 674 (Neb. 2009). While a fraudulent misrepresentation claim requires proof that the defendant knew the statement was untrue or was reckless as to whether the statements were true or false, negligent misrepresentation merely requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information. *Flamme v. Wolf Ins. Agency*, 476 N.W.2d at 809 (Neb. 1991) (Shanahan, J., concurring).

The difference between fraudulent misrepresentation and negligent misrepresentation is the duty required in each claim. *Gibb v. Citicorp Mortg., Inc.*, 518 N.W.2d 910, 921 (Neb. 1994). In fraudulent misrepresentation, one becomes liable for breaching the general duty of good faith or honesty. *Id.* However, in a claim of negligent misrepresentation, one may become liable even though acting honestly and in good faith if one fails to exercise the level of care required under the circumstances. *Id.*

In a contract situation, the contractual relationship creates the duty to disclose. *Streeks, Inc. v. Diamond Hill Farms, Inc.*, 605 N.W.2d 110, 117 (Neb. 2000). In nondisclosure cases, whether a duty to speak exists is determined by all the circumstances of the case. *Id.* at 118. It is consistently recognized that one party to a business transaction is under a duty to exercise reasonable care to disclose facts basic to the transaction, if: 1) he knows that the other is about to enter into the transaction under a mistake as to those facts; and 2) that the other party, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts. *Id.* at 120.

8

       5. Fiduciary Duty/Agency

A fiduciary relationship does not arise merely because parties enter into a contract. [Huffman v. Poore, 569 N.W.2d 549, 562 (Neb. App. 1997)](#) (noting that a fiduciary duty arises out of a confidential relation, which exists when one party gains the confidence of another and purports to act or advise with the other's interest in mind). Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent of the other to so act. [Deutsche Bank Nat. Trust Co. v. Siegel, 777 N.W.2d 259, 263 (Neb. 2010)](#).

      B. Analysis

The court has reviewed the evidence submitted in favor of and against the motion and finds that there is a genuine issue of material fact with respect to whether there was a meeting of the minds in connection with the purported "accord and satisfaction." Jet Linx has not sustained its burden to show there was an agreement. Resolution of the issue will require assessments of credibility.

Further, Jet Linx has not shown that it is entitled to judgment as a matter of law on BLB Aviation's breach of contract and misrepresentation claims. Jet Linx has not shown that there are no genuine issues of material fact with respect to the elements of BLB Aviation's fraud and misrepresentation claims. The parol evidence rule is not applicable to a claim of fraud. Accordingly, the court finds Jet Linx's motion for summary judgment should be denied with respect to those claims.

However, there generally is no fiduciary relationship between parties to a contract. The court has reviewed the agreements at issue and finds that the agreements do not create an agency relationship between the parties. The contracts were arms-length

transactions between sophisticated businessmen. Accordingly, the court finds Jet Linx's motion for summary judgment should be granted with respect to the plaintiff's breach of fiduciary duty claim.

IT IS ORDERED:

1. The defendants' motion for summary judgment (Filing No. 87) is denied in part and granted in part in accordance with this Memorandum and Order.

2. The plaintiff's claim for breach of fiduciary duty is dismissed; the motion for summary judgment is denied in all other respects.

DATED this 28th day of June, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.